Todd Slobin (to be admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (to be admitted *Pro Hac Vice*)
rprieto@eeoc.net
SHELLIST | LAZARZ | SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

Melinda Arbuckle (to be admitted *Pro Hac Vice*)
marbuckl@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

*Counsel for Plaintiff, Carol Hale, and Proposed Class and Collective Action Members*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## TUCSON DIVISION

| | |
|---|---|
| CAROL HALE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CHG EMPLOYEE HOLDING LLC; and CORNERSTONE HEALTHCARE GROUP HOLDING, INC.<br><br>    Defendants. | Case No: _____<br><br>**ORIGINAL COMPLAINT FOR VIOLATIONS OF FLSA AND STATE LAW**<br><br>**COLLECTIVE ACTION AND CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Carol Hale ("Hale" or "Plaintiff"), on behalf of herself and all others similarly situated, files this Original Complaint against Defendants CHG Employee Holding LLC and Cornerstone Healthcare Group Holding, Inc. ("Defendants" or "Cornerstone"), showing in support as follows:

## I. INTRODUCTION AND NATURE OF ACTION

1.      Plaintiff brings this suit as a collective action under the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA" or "the Act"), and as a Rule 23 class action asserting a state law claim for unpaid straight-time compensation owed, on her own behalf and on behalf of the members of the proposed classes defined below.  Plaintiff and class members worked as hourly paid direct patient care nurses at Defendants' medical facilities located in Arizona.[1] For purposes of this lawsuit, Defendants are "joint employers" as that term is defined under the FLSA. Plaintiff and class members did not receive bona fide meal break periods. Instead, they were required and permitted to work off-the-clock for Defendants during their meal break periods and were not paid for such time.

2.      An employer is not required to pay an employee for meal periods if the employer can satisfy its burden of showing that the employee received a bona fide meal period. However, Defendants required nurses at Cornerstone to remain responsible for patient care throughout their shifts, including during meal periods. Nurses frequently went without meals, and even when they did attempt to eat, their meal periods were regularly interrupted by work demands. In short, Defendants used the nurses' meal

---

[1]      http://chghospitals.com/locations/

periods for the predominant benefit of Cornerstone. Notwithstanding Defendants'
practice of requiring nurses to be available for work and to in fact work throughout their
meal periods, Defendants employed timekeeping software which automatically deducted
thirty (30) minutes from the total time worked by nurses each shift so as to account for
these hypothetical meal periods, thereby enabling Defendants to receive the benefit of an
additional thirty minutes of unpaid work for each shift worked by class members.

3.     Defendants' practice of failing to relieve nurses of their duties during meal
periods, while simultaneously using timekeeping software to automatically deduct thirty
minutes from the total time paid per shift (on the pretext of accounting for meal periods
which nurses were not in fact free to take without constant interruption), had the effect of
depriving nurses of overtime compensation due to them under the FLSA in the weeks in
which they worked more than forty (40) hours in a week, and of depriving them of
straight-time compensation at their hourly rate in weeks in which they worked fewer than
forty (40) hours in a week. On information and belief, all of Cornerstone's non-exempt,
direct patient care nurses were subjected to these illegal pay practices.

4.     Plaintiff brings this suit under the collective action provisions of the FLSA
because she and the putative class members are similarly situated under the FLSA in the
following particulars: (a) they are or were hourly-paid direct patient care nurses subject to
Defendants' medical facility-wide policy of automatic pay deductions for meal periods;
(b) they are and were required and permitted to be available to perform uncompensated
work during those meal periods, and in fact did perform uncompensated work during
those periods; (c) the meal periods are and were predominantly for the benefit of
Defendants; and (d) Plaintiff and class members suffered overtime wage losses as a result

1  of Defendants' failure to pay wages at the federally required overtime rate for these thirty

2  minutes meal periods in the weeks in which the nurses worked more than forty hours in a

3  week.

4        5.     In addition to the FLSA collective action claims, Plaintiff brings this action

5  as a Rule 23 class action under Arizona state law (quantum meruit) because she and the

6  class members are similarly situated in the following particulars: (a) Plaintiff and class

7  members are or were hourly-paid direct patient care nurses who provided nursing

8  services for the financial benefit of Defendants; (b) there is no contract between the

9  parties for said services; (c) Defendants failed to pay Plaintiff and class members their

10 hourly rate for all hours worked, specifically, by failing to pay for meal period work at

11 the hourly rate in the weeks in which class members worked 40 or fewer hours; (d) the

12 mechanism by which Defendants shorted Plaintiff and class members of their hourly pay

13 was by the use of timekeeping software to deduct thirty minutes from each shift worked

14 by class members for a supposed "meal break" despite regularly requiring and permitting

15 the nurses to perform compensable work during the unpaid "meal break"; and (e) it is

16 unjust for Defendants to receive the sole financial benefit of the nurses' work without

17 paying them at their hourly rate.

18       6.  Accordingly, Plaintiff is similarly situated to the following classes of employees:

19 **FLSA Class:**

20       **Nurses employed at Defendants' Arizona Cornerstone locations to provide**
21       **direct patient care at any time during the three years before this Complaint**
          **was filed up to the present who, as a result of Defendants' practice of**
22       **automatically deducting 30 minutes from each shift worked and not paying**
          **for same, did not receive all of the overtime pay to which they were entitled**
23

24                                    - 4 -                   Case No.

**under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.**

**Rule 23 Class:**

**Nurses employed at Defendants' Arizona Cornerstone locations to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes from each shift worked and not paying for same, did not receive all of the straight time pay at their regular hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.**

## II.    THE PARTIES

### A.    Plaintiff Carol Hale

7.      Plaintiff Carol Hale is an individual residing in Pima County, Tucson, Arizona. She has standing to file this lawsuit.

8.      Hale's written consent to participate in this action is attached to this Complaint as "Exhibit 1."

### B.    Putative FLSA Collective Action Members

9.      Class Members are all of Defendants' current and former hourly-paid, direct patient care nurses who work or worked at an Arizona Cornerstone location during the time periods material to this suit, and who are due unpaid regular and/or overtime wages for compensable work performed during unpaid "meal breaks" as a result of Defendants' use of timekeeping software which deducted thirty minutes of time from each shift worked by class members.

10.      Hale seeks to represent the Collective Action Members seeking damages for claims of unpaid minimum wages and overtime wages pursuant to the FLSA, and is similarly situated to the Collective Action Members pursuant to 29 U.S.C. § 216(b).

**C.     Putative Rule 23 Arizona Class Action Members**

11.     The putative Arizona Class Action Members are current and former hourly-paid, direct patient care nurses who work or worked at an Arizona Cornerstone location during the time periods material to this suit, and who are due unpaid regular and/or overtime wages for compensable work performed during unpaid "meal breaks" as a result of Defendants' use of timekeeping software which deducted thirty minutes of time from each shift worked by class members.

12.     Hale seeks to represent the Arizona Class Action Members, seeking damages for the Arizona State Law Claim, described further below. Hale is a proper class representative pursuant to FED. R. CIV. P. 23(a)(4).

**D.     Defendant CHG Employee Holding, LLC**

13.     Defendant CHG Employee Holding, LLC is a Texas limited liability company which jointly operates Cornerstone and does business in Arizona. Defendant's registered agent for service of process is CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

**E.     Defendant Cornerstone Healthcare Group Holding, Inc.**

14.     Defendant Cornerstone Healthcare Group Holding, Inc. is a Delaware corporation doing business in Arizona which jointly operates Cornerstone. Defendant's registered agent for service of process is CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

III.    **FLSA COVERAGE**

15.    At all material times, Defendants have been employers within the meaning of Section 203(d) of the FLSA because they employed personnel such as Plaintiff and Class Members to operate Cornerstone. Plaintiff and Class Members worked exclusively for and under the sole direction and control of Defendants and for Defendants' financial gain. Plaintiff and Class Members are nurses whose services are integral to the medical care business which Defendants operate. Plaintiff and Class Members are economically dependent on Defendants' business: without nurses Defendants cannot operate Cornerstone - without a medical facility like Cornerstone Plaintiff does not have access to medical equipment, facilities and patients to earn a living. Plaintiff and Class Members are classified as W-2 employees of Defendants.

16.    At all material times, Defendants have been a "single enterprise" within the meaning of Section 203(r) of the FLSA because they have acted through unified operation and common control to further their common purpose of operating Cornerstone.

17.    At all material times, Defendants have been an enterprise in commerce within the meaning of Section 203(s)(1)(A) of the FLSA ("Traditional Enterprise Coverage") because:

      a. Defendants have had and continue to have employees engaged in commerce or in the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. By way of example and not by limitation, as a part of their work, Plaintiff and/or

Defendants' employees used food and medical equipment that was manufactured and shipped across state lines; used computers, office supplies, medical equipment, and telecommunications equipment that were manufactured and shipped across state lines; used the interstate telephone system, landline and cellular, and internet across state lines; banked with institutions across state lines; and ordered medical supplies from out of state.

b.   Defendants have had, individually and collectively, an annual gross business volume in excess of $500,000 per year. Based on information and belief, Defendants' occupancy at all its facilities are close to or at full capacity each month resulting in gross business volumes well in excess of a million dollars a year.

18.   At all material times, Defendants have been an enterprise in commerce within the meaning of Section 203(s)(1)(B) of the FLSA ("Named Enterprise Coverage") because:

a.   Defendant is engaged in the operation of an institution primarily engaged in the care of the sick and the aged. Specifically, Defendants offer a full continuum of care, which include specialty hospitals, senior living, and behavioral health. Because Defendants operate an institution primarily engaged in the care of the sick and elderly it is per se an "enterprise in commerce" pursuant to Section 203(s)(1)(B).

19.     At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207(a)(2)(C) ("Individual Coverage") because Plaintiff had direct and substantial involvement with interstate commerce in ways which were regular, recurring, and a substantial part of her work. By way of example and not by limitation, Plaintiff incorporate the examples listed above in paragraph 18(a) of this complaint.

## IV.   JURISDICTION AND VENUE

20.     This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and the FLSA at 29 U.S.C. § 216(b).

21.     This Court also has supplemental jurisdiction over Plaintiff's Arizona State Law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact, namely, the loss of wages suffered by Plaintiff and class members as a result of Defendants' policy of automatically deducting 30 minutes of meal break time from shifts worked while simultaneously requiring and permitting Plaintiff and class members to work during said meal break time.

22.     The United States District Court for the Southern District of California has personal jurisdiction over Defendant because Defendant does business in California and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in California and in this District.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District.

1

2

**V.     FACTUAL                                    BACKGROUND (APPLICABLE TO ALL CLAIMS FOR RELIEF)**

3

24.     Defendants operate Cornerstone Healthcare Group ("Cornerstone") medical

4

facilities throughout the country, which include two facilities in Arizona: (1) Cornerstone

5

Specialty Hospitals Tucson and (2) Cornerstone Behavioral Health El Dorado.

6

Cornerstone provides care for patients in need of extended medical. Defendants' specialty

7

hospitals also offer 24/7 physician coverage, multiple physician specialties, physical

8

rehabilitation services and other medical services. Defendants also offer senior living

9

communities for long term 24/7 medical care tailored to the medical needs of senior

10

citizens living at its communities. To provide continuous medical services to its patients,

11

Cornerstone employs thousands of medical professionals and staff. Based on information

12

and belief, Cornerstone has employed more than 1,000 nurses during the applicable

statutory.

13

25.     Plaintiff Carol Hale is a Registered Nurse ('RN") who worked for

14

Cornerstone in Little Rock, Arkansas from approximately August 2014 to 2016, and in

15

Tucson, Arizona from approximately 2016 to August 2018. On or about August 2014,

16

she agreed to provide her services as a RN in exchange for Defendants' agreement to

17

compensate her at a specified hourly rate for each of her hours worked. On information

18

and belief, the agreed hourly rate was approximately $41 per hour.

19

26.     Plaintiff and class members are regularly scheduled to work numerous

20

shifts per week at Cornerstone. However, Plaintiff and the class members have the option

21

to pick up additional shifts, and frequently do so. In Plaintiff's case, she routinely picked

22

23

24

Original Complaint

up additional shifts per week. Accordingly, Plaintiff and class members regularly work more than 40 hours per week at Cornerstone.

27.   Plaintiff alleges that in each and every week of her employment, and as a result of a common policy equally applicable to her and to every member of the class, Defendants (a) failed to pay them the agreed hourly rate for some of their work performed in those weeks in which they worked forty (40) or fewer hours; and (b) failed to pay them at the time-and-one-half overtime rate required by federal law for some of their work performed in those weeks in which they worked more than forty (40) hours in a week. Specifically, they were not compensated at any rate whatsoever for thirty minutes of each of their shifts worked.

28.   Cornerstone generated its payroll documentation for Plaintiff and class members by using time keeping software. The timekeeping software was configured to deduct thirty minutes of time from each shift worked by the nurses. Each pay period, the amount of time tracked by the software, after deduction of thirty minutes per shift, was uploaded for processing into the payroll processing software.

29.   All of Cornerstone's hourly-paid direct patient care nurses are and were subject to Defendants' policy to automatically deduct thirty minutes per shift from the recorded time worked.

30.   Plaintiff anticipates that Defendants may attempt to argue that the thirty minute deductions from each shift worked were warranted so as to account for uninterrupted thirty minute lunch breaks during which no work was performed and for which no compensation is owed. In point of fact, however, Plaintiff and her nurse colleagues routinely worked through their lunch breaks, and even when they did manage

to spend a few minutes eating, that time was regularly interrupted by other nurses on duty, nurse managers, doctors, patients' families, and other Cornerstone staff.

31.     Defendants are and were familiar with the demands of the health care industry in general and of providing medical services at Cornerstone in specific, and they deliberately chose to keep their labor costs down by staffing an insufficient number of personnel per shift. Rather than hiring and staffing a sufficient number of nurses per shift to allow the nurses to take full, uninterrupted meal breaks, Defendants required and permitted these overworked nurses to work during their meal breaks for the benefit of Defendants. Defendants knew and expected that Plaintiff and class members would work through their unpaid "meal breaks," and this was in fact a daily occurrence at Cornerstone.  Defendants' supervisors and management routinely interrupted the meal breaks of Plaintiff and class members and made work demands upon them. Defendants' supervisors and management were actively involved in scheduling the shifts worked by Plaintiff and the class, and they had actual knowledge that their staffing and work policies were causing Plaintiff and class members to work through meal breaks to the predominant benefit of Defendants.

32.     Plaintiff and class members were not only required to remain at Cornerstone during their shifts, including during the supposed "meal breaks," they were expected to remain on their assigned floors/hallways so as to be able to respond to patient care needs at all times. Plaintiff and class members were also required to respond to emergency calls at all times, including during any supposed "meal break." In short, far from ensuring that Plaintiff and class members were completely relieved of work duties during the supposed "meal breaks," Defendants expected and required Plaintiff and class

members to attend to work demands throughout their shifts, including during any "meal break."

33.     In that connection, Plaintiff and class members were expected to complete orders on assigned patients, to answer calls, to respond to medical emergencies, to advise other staff on patient care and status issues, to answer questions from Cornerstone staff or family members, and in general to respond immediately to work demands during "meal breaks."

34.     Defendants knew and/or had reason to know that Plaintiff and class members performed work during their unpaid "meal breaks," as evidenced by Defendants requiring Plaintiff and class members to remain at Cornerstone and on their assigned floors/hallways during their shifts so as to be available to respond to work demands at any time during the shift, including during meal breaks. Moreover, Plaintiff and class members performed work for Defendants during the unpaid meal breaks in plain sight of Defendants' management, quite often at Defendants' management's specific request.

35.     Despite Defendants' actual knowledge that Plaintiff and other class members worked during supposed "meal breaks," Defendants willfully failed to compensate Plaintiff and class members for such work, electing instead to accept the benefits of the class members' work without compensating them for such work.

36.     Given that Defendants' supervisors and managers knew from direct observation and from their general knowledge of Cornerstone's operations that Plaintiff and class members (a) regularly worked through the deducted meal break time without compensation; and (b) regularly accumulated overtime hours even after deduction of the uncompensated thirty minutes per shift (as evidenced by the fact that Cornerstone paid

for overtime that still appeared in the timekeeping records even after deduction of the thirty minutes per shift), Defendants had both actual and constructive knowledge that Plaintiff and class members were not being compensated for meal periods worked at any rate whatsoever, much less at the agreed hourly rate or at the federally mandated time-and-one-half rate required for overtime.

Calculation of damages

37.    Evidence reflecting the number of uncompensated meal break hours worked by each class member, as well as their applicable regular and overtime rate, is in the possession of Defendants. Actual damages can be calculated easily once Defendants have produced complete payroll records for the class. The absence of a bona fide meal break makes all unpaid meal break time compensable, and all that remains is to establish the number of shifts worked by class members in the weeks in which they worked more than 40 hours, and the number of shifts worked in which they worked fewer than 40 hours. Each shift worked will entitle class members to half an hour of pay (depending on the meal break deduction length) at either their usual hourly rate or at their time-and-one-half rate, depending upon whether the week in question is one in which forty or fewer hours were worked, or one in which forty or more hours were worked. The information needed to calculate damages—specifically the dates of the shifts worked, the total number of hours worked per week, and the base hourly rate of pay for each worker—exists right now in Defendants' timekeeping and payroll databases. The damage calculation itself will be a straightforward accounting process.

## VI.    COLLECTIVE ACTION ALLEGATIONS
## VIOLATION OF 29 U.S.C. § 207 - OVERTIME

38.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

39.    Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of the members of the putative class.

40.    The action is filed on behalf of all of Defendants' hourly-paid direct patient care nurses who worked at all Cornerstone Arizona locations during the three years preceding the filing of this action through entry of judgment in this case, whose overtime pay was docked pursuant to an automatic meal break deduction policy notwithstanding the fact that the nurses performed compensable work during the supposed meal break periods (the "FLSA Class").

41.    This FLSA Class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is currently unknown to Plaintiff, and although the data which would identify the size of the FLSA Class is within the sole control of Defendants, upon information and belief there are thousands of nurses encompassed by the class, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

42.    Plaintiff will fairly and adequately protect the interests of the FLSA Class members and have retained counsel experienced and competent in the field of wage and hour law and class action litigation. Plaintiff has no interest that is contrary to or in conflict with the interests of the members of the FLSA Class.

43.     A collective action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to seek redress individually for the wrongs done to them.  Management of the suit as a collective action will serve judicial economy.

44.     Questions of law and fact common to the FLSA Class members predominate over questions that may affect only individuals because Defendants have acted on grounds generally applicable to all FLSA Class members. Among the common questions of law and fact common to Plaintiff and other collective action class members are:

a.  whether Defendants employed class members in the manner that "employment" is understood and defined by the FLSA;

b.  whether Plaintiff and the FLSA Class members were expected to and/or required to work during unpaid meal breaks, and in fact did so;

c.  Whether Defendants' control of the conditions of the "meal break" was for the predominant benefit of Cornerstone and whether it made such time compensable as a matter of law;

d.  whether Defendants failed to pay Plaintiff and the FLSA Class members overtime compensation for some of their hours worked in excess of forty hours per workweek in violation of the FLSA, as a result of Defendants' automatic deduction of, and failure to pay for, half an hour or one hour

meal break periods in each shift worked in weeks in which overtime hours were otherwise worked;

e. whether Defendants' violations of the FLSA were willful as that term is understood in the context of the FLSA; and

f. whether Defendants are liable for damages claimed hereunder, including but not limited to unpaid overtime wages, liquidated damages, attorneys' fees and costs.

45.     Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a collective action.

46.     The FLSA 216(b) collective action class may be defined as:

**Nurses employed at all Cornerstone Arizona locations to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting half-an-hour from each shift worked and not paying for same, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.**

## VII.   ARIZONA STATE LAW CLASS ACTION CLAIM

47.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section, unless inconsistent.

48.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) and 28 U.S.C. § 1367, Plaintiff seeks to prosecute her state claim for quantum meruit as a class action on behalf of all hourly-paid direct patient care nurses who worked at Arizona Cornerstone locations at any time during the preceding three-year time period before the filing of this action through entry of judgment whose pay has been docked by application of an automatic

meal break deduction to their shifts worked in the weeks in which they did not work overtime (the "Rule 23 Class").

49.   This Rule 23 Class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is currently unknown to Plaintiff, and although the data which would identify the sizes of the Rule 23 Classes is within the sole control of Defendants, upon information and belief there are thousands of nurses encompassed by the classes, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

50.   Plaintiff will fairly and adequately protect the interests of the Rule 23 Class Members and has retained counsel experienced and competent in the field of unpaid wage compensation and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with the interests of the members of the Rule 23 Classes.

51.   A class action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the Rule 23 Classes may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to individually seek redress for the wrongs done to them. Management of this suit as a class action will serve judicial economy. A class action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the Rule 23 Classes may be relatively small, the expense and

burden of individual litigation make it virtually impossible for the members of the class to individually seek redress for the wrongs done to them. Management of this suit as a class action will serve judicial economy.

52.     Questions of law and fact common to the Rule 23 Classes predominate over questions that may affect only individuals because Cornerstone has acted on grounds generally applicable to all class members. Among the common questions of law and fact common to Plaintiff and other members of the Rule 23 Classes are:

a.  whether Defendants were to pay an hourly wage to Plaintiff and to members of the class for each and every hour of their work;

b.  whether Defendants failed to pay Plaintiff and members of the class for all hours worked as a result of its automatic deduction of half an hour or one hour meal period per shift, notwithstanding the fact that Plaintiff and class members regularly performed compensable work during such meal breaks;

c.  whether Defendants engaged in a continuing policy, pattern or practice of failing to pay Plaintiff and the class members for all hours worked;

d.  whether Defendants are liable for damages claimed hereunder, including but not limited to unpaid meal break time worked, attorneys' fees and costs.

53.     Plaintiff's claims are typical of the claims of the Rule 23 Class. Plaintiff, like all other class members, was subject to Cornerstone's policy and practice of automatically deducting half an hour of pay per shift worked even though Plaintiff performed compensable work throughout her shift. Plaintiff and each class member have been damaged and are entitled to recovery by reason of the Cornerstone's policies and practices. Class action treatment will allow class members to litigate their claims in a

manner that is fair to all parties involved, free of fear of retaliation, and efficient for those parties and for the judicial system.

54.     The Rule 23 Class members are defined as:

**Nurses employed at all Cornerstone Arizona locations to provide direct patient care at any time during the applicable common law statutory period before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes from each shift worked and not paying for same, did not receive all of the straight time pay at their hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.**

## VIII.   DAMAGES SOUGHT

**FLSA Collective Action Damages**

55.     Plaintiff and Collective Action Members are entitled to recover their unpaid overtime compensation.

56.     Plaintiff and Collective Action Members are also entitled to an amount equal to all of their unpaid overtime compensation as liquidated damages. 29 U.S.C. § 207 and 216(b).

57.     Plaintiff and Collective Action Members are also entitled to recover their attorney's fees and costs as provided for by the FLSA. 29 U.S.C. § 216(b).

**Rule 23 Class Action Damages**

58.     Plaintiff and Rule 23 Class members are entitled to recover all damages incurred by them due to Defendants' breach of the employment agreements, specifically for half-an-hour of pay per shift worked in non-overtime weeks at their then-applicable contractual hourly rate.

59.     Plaintiff and Rule 23 Class members are also entitled to recover their attorney's fees and costs incurred in prosecuting their claims for damages due to Defendants' breach of their employment agreements.

60.     Plaintiff and Rule 23 Class members are also entitled to prejudgment and post-judgment interest.

## IX.     JURY DEMAND

61.     Plaintiff hereby demands a jury trial on all causes of action and claims for relief with respect to which she and the putative Collective and Arizona Class Action Members have a right to jury trial.

## X.     <u>DAMAGES AND PRAYER</u>

62.     Plaintiff asks that the Court issue summons for Defendants to appear and answer, and that Plaintiff and the Collective and Arizona Class Action Members be awarded a judgment against Defendants or order(s) from the Court for the following:

      a.      An order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all putative Collective Action Members;

      b.      An order certifying that the Arizona State Law Claims may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

      c.      Designation of Hale as a Representative of the Arizona Class Action Members;

      d.      Designation of attorneys Todd Slobin and Ricardo J. Prieto, of Shellist Lazarz Slobin, LLP, and Melinda Arbuckle, of Baron & Budd, P.C., as Class Counsel for the Arizona Class Action Members;

      e.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Arizona State law;

f.      An injunction against Defendants and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

g.      An award of damages including all unpaid overtime wages, and all liquidated damages, and restitution to be paid by Defendants;

h.      An award of all unpaid hours worked in non-overtime weeks at their then-applicable hourly rates;

i.      Appropriate statutory penalties;

j.      Costs of action incurred herein, including expert fees;

k.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

l.      Pre-judgment and post-judgment interest, as provided by law;

m.      Such other injunctive and equitable relief as the Court may deem just and proper.

DATED:  December 4, 2018.

Respectfully submitted,

By:     s/Melinda Arbuckle
        Melinda Arbuckle

**BARON & BUDD, P.C.**
Melinda Arbuckle (to be admitted *Pro Hac Vice*)
marbuckl@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

Case No.
Original Complaint

**SHELLIST | LAZARZ | SLOBIN LLP**
Todd Slobin (to be admitted *Pro Hac Vice*)
tslobin@eeoc.net
Ricardo J. Prieto (to be admitted *Pro Hac Vice*)
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

*Counsel for Plaintiff, Sean Martin Delph, and
Proposed Class and Collective Action Members*